IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN R.,[1] | ) |
|         Plaintiff, | ) |
| v. | ) Case No. 20-cv-887-RJD[2] |
| COMMISSIONER of SOCIAL SECURITY, | ) |
|         Defendant. | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for DIB benefits in May 2018, alleging an onset date of January 19, 2018 (Tr. 200). The ALJ held a hearing via telephone conference on March 31, 2020 and denied Plaintiff's application on May 6, 2020 (Tr. 26, 31). The Appeals Council denied review and Plaintiff filed a timely Complaint in this Court (Tr. 1; Doc. 1).

**Issue Raised by Plaintiff**

I.    Whether the ALJ failed to account for deficits of concentration, persistence, or pace in the RFC.

II.   Whether the ALJ failed to ask the vocational expert to consider the elements of

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 8).

Page **1** of **10**

the RFC finding.

**<u>Applicable Legal Standards</u>**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3]  Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work?  20 C.F.R. § 404.1520.  Between steps three and four, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is the claimant's "ability to work despite [his] health problems." *Reynolds v. Kijakazi*, 25 F. 4th 470, 473 (7th Cir. 2022); *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016).  The ALJ "need only include limitations [in the RFC] that are supported by the medical record." *Reynolds,* 25 F. 4th at 473 (internal citations omitted).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. 20 C.F.R. § 404.1520.  A negative answer at any step other than step 3 precludes a

---

[3]  The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  As is relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.   Most citations herein are to the DIB regulations out of convenience.

finding of disability.  (*Id*.).  The plaintiff bears the burden of proof at steps 1–4.  *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).  Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy.  *See id.*

Importantly, this Court's scope of review is limited. 42 U.S.C. § 405(g) ("the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").  This Court determines whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (internal citations omitted).  The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citation omitted).  However, this Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above.  She determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 19, 2018 (Tr. 17).  She found that Plaintiff has the following severe impairments: 1) seizure disorder/epilepsy; 2) cervical degenerative disc disease; 3) emphysema/chronic obstructive

pulmonary disease ("COPD"); 4) status-post pneumothorax; 4) amphetamine use; 5) major depressive disorder; and 6) generalized anxiety disorder (Tr. 17).  However, in step 3, she found that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" (Tr. 18.).[4]  The ALJ assessed the "paragraph B" criteria of the depressive and anxiety disorder listings and noted that the Plaintiff had a moderate limitation in "concentration, persistence, and pace" (Tr. 19).[5]  The ALJ explained that when she assessed the paragraph B criteria, she was not making a RFC assessment, stating "the mental [RFC] assessment used at steps 4 and 5…requires a more detailed assessment of the areas of mental functioning" (Tr. 20).

At Step 4, the ALJ determined that Plaintiff has the residual functional capacity to:

> [P]erform a range of light work as defined in 20 CFR 404.1567(b). Specifically, the claimant is able to lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently.  He is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. He is unable to climb ladders, ropes, or scaffolds. He should avoid all exposure to unprotected heights and use of dangerous moving machinery.  He is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes.

(Tr. 20).

The ALJ found that Plaintiff is unable to perform any past relevant work (Tr. 25). However, considering Plaintiff's age, education, work experience, and RFC, "there are jobs that

---

[4]  The Social Security Administration explains that "[t]he absence of a listing-level impairment does not mean the individual is not disabled. Rather, it merely requires the adjudicator to move on to the next step of the process and apply other rules in order to resolve the issue of disability." https://www.ssa.gov/disability/ professionals/ bluebook/listing-impairments.htm (last accessed March 30, 2022).
[5]  "Paragraph B…provides the functional criteria we assess, in conjunction with a rating scale…to evaluate how your mental disorder limits your functioning." https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last accessed March 30, 2022).

exist in significant numbers in the national economy" that he can perform (*Id*.). Therefore, Plaintiff was not disabled (Tr. 26).

### The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Order. The following summary of the record is tailored to Plaintiff's arguments, which only relate to Plaintiff's mental impairments.

    **1.    Agency forms**

Plaintiff's roommate completed a Function Report on August 20, 2019, quoting Plaintiff's statements throughout the form (Tr. 269). She noted that Plaintiff needed her (the roommate) to remind him to take his medicine (Tr. 265). Quoting Plaintiff, she wrote "I've been real depressed and it just seems like everybody just irritates me. Especially my roommate." (Tr. 267). She wrote that he does not finish what he starts (*Id*.). In response to the question, "[f]or how long can you pay attention?", Plaintiff's roommate quoted him as saying "I don't know, I interrupt a lot I'm told." (*Id*.). Plaintiff's roommate also quoted Plaintiff in the following statements:

> I just stay at home so I don't have to deal with anyone. I don't handle stress very well at all I'm not one for drama or change. I'm not one for change at all. I get confused when I'm pulled from normal routines. I get really mad about things and people.

(Tr. 268).

    **2.    Evidentiary Hearing**

Plaintiff previously worked as a mate/deckhand and a house painter (Tr. 41-42). The ALJ asked him if he is currently taking medicine for depression, and his answer was inaudible to the stenographer (Tr. 45). Plaintiff testified that his memory is "not good at all…I can't remember stuff I did yesterday, or who called me yesterday, or…I was supposed to go to my mother's today

and talk to her about some things, and I forgot all about going over there this morning to talk to her" (Tr. 64). Plaintiff has trouble staying focused, explaining that when his son talks to him about helping pay his bills, Plaintiff "just zone[s] him out…it's so overwhelming for me that now my son's got to do this" (Tr. 65). On two occasions, Plaintiff took care of his neighbors' animals when his neighbor is away from home (Tr. 61).

The ALJ presented the following hypothetical to Darryl Taylor, vocational expert:

> …[an] individual the same age, education, and work experience as the Claimant. This individual would be able to lift up to 20 pounds occasionally, lift up to ten pounds frequently, stand and walk about six hours and sit for up to six hours in an eight-hour work day with normal breaks. The individual would never be able to climb ladders or scaffolds. The individual needs to avoid all use of dangerous moving machinery and exposure to unprotected height, and the individual is able to perform simple, routine and repetitive tasks in a work environment free of fast paced productional requirements, involving only simple work related decisions or team work placed changes.

(Tr. 69-70). The expert testified that the individual could perform jobs in the national economy, working as an unskilled cleaner or hand packer (*Id.*).

### 3. Relevant Medical Records

Plaintiff established care with a Physician Assistant, Edward Carl Anderson, in March 2018 (Tr. 490). PA Anderson noted as part of his Assessment/Plan that Plaintiff had "major depressive disorder, single episode, unspecified" and prescribed Celexa (Tr. 490, 492). He also prescribed Nortriptyline for insomnia (*Id.*). In April 2019, Plaintiff reported during his consultative psychological exam that he had never received any type of mental health treatment other than the medication he received from his primary care provider (Tr. 383).

Plaintiff reported to a hospital for a seizure in July 2019 (Tr. 400). He told a nurse in the

Emergency Department that he hoped "the ER doctor would just kill [me]" (Tr. 401).   He was admitted after radiology showed that he had a large right pneumothorax[6], and also because of his suicidal ideation (Tr. 402).   A nurse practitioner noted as follows:

> The patient was trying to tell me that he was just saying that he wanted to die because of the pain and that he was not feeling suicidal.   However, the significant other tells me that he does deal with depression and anxiety and that he is going through a rough patch in his life at this time and has been depressed over it.

(Tr. 402).   Plaintiff was transferred to another hospital for cardiothoracic and pulmonary consultations (Tr. 447).   At that time, he denied any suicidal attempts but the nursing staff reported that he was anxious (*Id.*).   He was discharged four days later; his discharge diagnoses did not mention depression, anxiety, or any other mental illness (Tr. 450).

Plaintiff saw a Physician Assistant, James Nanney, on August 21, 2019 for "hospital f/u" and depression (Tr. 486).   PA Nanney noted that Plaintiff was taking Celexa for depression. (Tr. 488).   Plaintiff completed a "Patient Health Questionnaire" on September 20, 2019 and indicated that nearly every day he had trouble concentrating, and his lack of concentration made daily living extremely difficult (Tr. 503).   PA Nanney treated Plaintiff again on November 5, 2019 and prescribed Venlafaxine (an anti-depressant) in addition to the Celexa (Tr. 509).

    4.    **Medical Opinion-Stephen G. Vincent, Ph.D.**

Psychologist Stephen G. Vincent performed a consultative psychological examination on April 4, 2019 (Tr. 382).   He concluded that Plaintiff was "logical, coherent, and relevant during the examination.   He is somewhat of a poor historian suggestive of possible long-term memory deficits possible related to seizure activity, but nevertheless, during the examination he had no

---

[6] "Pneumothorax is air around or outside the lung." www.hopkinsmedicine.org/health/conditions-and-diseases/ pneumothorax (last visited March 29, 2022).

difficulty problem solving efficiently and responding to all test demands adequately" (Tr. 385).

## Analysis

Plaintiff makes no argument regarding the manner in which the ALJ weighed the evidence. Instead, he argues that the following language in the RFC did not account for Plaintiff's deficits in concentration, persistence, and pace: "[h]e is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes." Plaintiff cites multiple cases from the Seventh Circuit that explain the ALJ must include in the RFC (as well as the hypothetical posed to the vocational experts) "all of the claimant's limitations supported by the medical record." *See, e.g., Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Generic statements in the RFC, e.g., "simple, repetitive tasks" and "limited interactions with others", do not always "adequately capture a claimant's [CPP] limitations." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019).

Here, the ALJ found that Plaintiff was "able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes." These phrases (or similar phrases) have been rejected by the Seventh Circuit in cases where there was a medical opinion (either by the claimant's treating physician or a state agency consultant) that the plaintiff had specific CPP limitations. *Varga v. Colvin*, 794 F.3d 809, 811-14 (7th Cir. 2015); *Decamp v. Berryhill*, 916 F.3d 671, 673-76 (7th Cir. 2019); *Crump*, 932 F.3d at 570-71; *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). In those cases, the Seventh Circuit said that the RFC must address the "documented limitations in concentration, persistence, and pace." *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018).

The Court acknowledges that at Step 3, the ALJ determined that Plaintiff had a moderate CPP limitation. Similarly, in *Jozefyk*, the ALJ found that the Plaintiff had moderate CPP and social limitations. *Jozefyk*, 923 F.3d at 495. In both *Jozefyk* and this case, the plaintiff pointed to "self-reported symptoms" that were not confirmed by his treating physicians or state agency physicians. *Id*. at 497. In both cases at Step 4, the ALJ used the "generic" language in the RFC that the Seventh Circuit has rejected for other claimant's CPP limitations. *See id*. at 498. Regardless, the medical record did not support any "evidence-based restrictions that the ALJ could include in a revised RFC finding on remand" regarding the claimant's CPP limitations. *Id*. Accordingly, any error in drafting the RFC was harmless. *Id*. Likewise, here, Plaintiff's physicians did not document any CPP impairments, and the state agency evaluations showed no CPP impairments. Any error made by the ALJ regarding the specificity of Plaintiff's alleged CPP impairments is therefore harmless. *See id*.

Finally, Plaintiff argues that this case should be remanded because the transcript of the hearing indicates that in the hypothetical presented to the vocational expert, the ALJ referred to "simple work related decisions or *team work placed* changes" (emphasis added). Then, in the RFC, the ALJ stated that the claimant was restricted to "simple work-related decisions and *routine workplace* changes" (emphasis added). The Court notes that Plaintiff's March 31, 2020 hearing was held telephonically because of the COVID-19 pandemic and agrees with Defendant that the discrepancy between the hypothetical and the RFC is likely a transcription error. Regardless, the Court is persuaded by Defendant's argument that whether the vocational expert heard the ALJ say "routine workplace changes" or "team work paced changes", the DOT definitions of the occupations listed by the vocational expert (cleaner, and hand packer) do not involve more than

routine workplace changes. DOT 323.687-018, 1991 WL 672784;  920.687-018, 1991 WL 687965.  Any error was therefore harmless.

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ's findings are supported by substantial evidence and the ALJ did not make any errors of law.  Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.  The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: March 31, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**